UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING           :        08 CV 0583 (VM)
INVESTMENTS CORPORATION,
                                            :
              Plaintiffs,
                                            :
   - against -
                                            :
INDUSTRIAL ENTERPRISES OF AMERICA, INC.,
BECKSTEAD AND WATTS, LLP,                   :
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,            :

              Defendants.                   :

------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS**


GANFER & SHORE, LLP

360 Lexington Avenue
New York, New York 10017
(212) 922-9250 (p)
(212) 922-9335 (f)

*Attorneys for Defendants Industrial Enterprises Of America, Inc., James Margulies, and Dennis O'Neill*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

    POINT I   -  PLAINTIFFS' ALLEGATIONS OF SECTION 10(b) AND
                      RULE 10b-5 LIABILITY SHOULD BE DISMISSED .................................. 2

        A. Plaintiffs Have Not Pled False Statements, Much Less When and
           Where Any Allegedly False Statements Were Made and By Whom ........... 2

        B. Plaintiffs Are Required to Establish a "Strong Inference" of Scienter .......... 6

        C. Plaintiffs' Pleadings Fail to Establish a "Strong Inference" of Scienter ........ 7

        D. Plaintiffs' Pleadings Fail to Establish Loss Causation ................................ 10

    POINT II - PLAINTIFFS' ALLEGATIONS OF SECTION 20(a) LIABILITY
                    SHOULD BE DISMISSED ......................................................................... 11

    POINT III - PLAINTIFFS' ALLEGATIONS OF COMMON LAW FRAUD
                     SHOULD BE DISMISSED ......................................................................... 12

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases** — **Page**

Abercrombie v. Andrew Coll. 438 F. Supp. 2d 243 (S.D.N.Y. 2006) .......... 12

Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.
  74 F. Supp. 2d 352 (S.D.N.Y. 1999) .......... 10, 13

Avnet, Inc. v. American Motorists Insurance Co.
  684 F. Supp. 814 (S.D.N.Y. 1988) .......... 12

Bayou Hedge Fund Litigation
  534 F. Supp. 2d 405 (S.D.N.Y. 2007) .......... 7

Blech Securities Litigation
  961 F. Supp. 569 (S.D.N.Y. 1997) .......... 11

Chill v. General Elec. Co.
  101 F.3d 263 (2d Cir. 1996) .......... 8

City of Brockton Retirement System v. Shaw Group Inc.
  No. 06 Civ. 8245(CM)(MHD), 2008 WL 833943 (S.D.N.Y. March 18, 2008) .......... 2, 6, 9

DiVittorio v. Equidyne Extractive Indus., Inc.
  822 F.2d 1242 (2d Cir. 1987) .......... 3

Elliott Associates, L.P. v. Hayes
  141 F. Supp. 2d 344 (S.D.N.Y. 2000) .......... 11

Emergent Capital Inv. Mgmt. v. Stonepath Group
  343 F.3d 189 (2d Cir. 2003) .......... 10

Ernst & Ernst v. Hochfelder
  425 U.S. 185 (1976) .......... 6

Forrest v. Unifund Fin, Group, Inc.
  No. 04 Civ. 5151 (LTS), 2005 WL 1087490 (S.D.N.Y. May 5, 2005) .......... 2

Fraiberg v. Taplin
  No. 88 CIV. 6540 RPP, 1990 WL 64673 (S.D.N.Y. May 8, 1990) .......... 5

Ganino v. Citizens Utils. Co.
  228 F.3d 1548 (2d Cir. 2000) .......... 6

Garber v. Legg Mason, Inc.
  537 F. Supp. 2d 597 (S.D.N.Y. 2008) .......... 6

Hudson Technologies, Inc. Sec. Litig.
 Civ. No. 98-1616, 1999 WL 767418 (S.D.N.Y. September 28, 1999)......................................8

Kalnit v. Eichler
 264 F.3d 131 (2d Cir. 2001)..............................................................................................6, 7

Michaelson v. Scaduto
 205 A.D.2d 507, 612 N.Y.S.2d 659 (2d Dep't 1994)............................................................12

Miller v. Lazard, Ltd.
 473 F. Supp. 2d 571 (S.D.N.Y. 2007)..................................................................................3, 7

New York University v. Continental Insurance Co.
 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283 (1995)....................................................................12

Novak v. Kasaks
 216 F.3d 300 (2d Cir. 2000)..................................................................................................2

Olsen v. Pratt & Whitney Aircraft, Div. Of United Tech. Corp.
 136 F.3d 273 (2d Cir. 1998)..................................................................................................5

Ross v. Bolton
 83 Civ. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr.4, 1989).............................................11

Salomon Smith Barney Mut. Fund Fees Litigation
 441 F. Supp. 2d 579 (S.D.N.Y. 2006)....................................................................................9

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.
 75 F.3d 801 (2d Cir. 1996))..................................................................................................6

Scholastic Corp. Sec. Litig.
 252 F.3d 63 (2d Cir. 2001)....................................................................................................8

S.E.C. v. First Jersey Securities, Inc.
 101 F.3d 1450 (2d Cir. 1996) (citations omitted)................................................................11

Shields v. Citytrust Bancorp, Inc.
 25 F.3d 1124 (2d Cir. 1994)..................................................................................................7

Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.
 985 F. Supp. 427 (S.D.N.Y. 1997)........................................................................................6

Stuart Silver Associates, Inc. v. Baco Development Corp.
 245 A.D.2d 96, 665 N.Y.S.2d 415 (1st Dep't 1997)......................................................12, 13

Tellabs, Inc. v. Makor Issues & Rights, Ltd.
 --- U.S. ----, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007).....................................................2, 6

The High View Fund, L.P. v. Hall
    27 F. Supp. 2d 420 (S.D.N.Y. 1998) .......................................................................... 11

Three Crown Ltd. P'ship v. Caxton Corp.
    817 F. Supp. 1033 (S.D.N.Y. 1993) ............................................................................ 3

United Mine Workers of America v. Gibbs
    383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)) ................................... 13

Walden Terrace, Inc. v. Broadwall Management Corp.
    213 A.D.2d 630, 624 N.Y.S.2d 217 (2d Dep't 1995) ................................................ 12

Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC
    474 F. Supp. 2d 505 (S.D.N.Y. 2007) ......................................................................... 9

**Statutes and Rules**             **Page**

Section 10(b) and Rule 10b-5 ................................................................................................ 6

CPLR 3016(b) ...................................................................................................................... 12

Defendants Industrial Enterprises Of America, Inc. ("IEAM"), James Margulies, and Dennis O'Neill (the "Moving Defendants") respectfully move this Court to dismiss with prejudice the claims asserted against it in Plaintiffs' Complaint, filed January 23, 2008, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

## PRELIMINARY STATEMENT

The Complaint in this case is without any substance whatsoever and should be dismissed. The Complaint alleges securities fraud and yet does not identify a single false or misleading statement or omission, much less who was responsible for any such statement or omission, when any such statement was made (or, if omission, the failure to speak occurred), or to whom it was made. Plaintiffs do not identify any scheme for the simple reason that there was none. Plaintiffs cannot even cogently allege damage causation because the Defendants did nothing to damage them. Indeed, the only statement of any of the defendants that is even identified is a single press release that, while not positive news, is not alleged to be false in any regard.

The Complaint alleges the existence and operation of "scheme" that is wholly undefined as to when it was formed, who participated in it, what conduct—much less specific acts—by whoever participated took place, and how it is that Plaintiffs' vague and poorly calculated "damages" flowed from this scheme. Tellingly, Plaintiffs recognize (Compl. ¶ 30) that they knew IEAM's stock price was falling prior to the settlement they reached with IEAM and yet they still pursued the settlement agreement.

Simply, the Complaint defies summary because it is bereft of narrative details, much less the specific, particularized factual allegations alleging a strong inference of scienter needed to survive a motion to dismiss. Plaintiffs' Complaint is the sum of "zero plus zero plus zero plus

zero plus zero." City of Brockton Retirement System v. Shaw Group Inc., No. 06 Civ. 8245(CM)(MHD), 2008 WL 833943, at *11 (S.D.N.Y. March 18, 2008).

As discussed below, the first three causes of action should be dismissed for a variety of reasons, principally because Plaintiffs' allegations do not even approach conformity with the heightened pleading requirements of Rule 9(b) or the PSLRA. Plaintiffs make no effort at any particularized allegations, and there is no possible inference of scienter one can draw from the pleadings, and certainly not a compelling, cogent, strong inference of scienter. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., --- U.S. ----, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007). The fourth cause of action should be dismissed because it is similarly factually vague, broad, or conclusory and reliant on the meritless allegations that go before in the first three causes of action. The Court should decline jurisdiction over the common law fraud claim under New York law, which fails in any case to even approach the pleading of fraud required.

## ARGUMENT

I. **PLAINTIFFS' ALLEGATIONS OF SECTION 10(b) AND RULE 10b-5 LIABILITY SHOULD BE DISMISSED.**

   A. **Plaintiffs Have Not Pled False Statements, Much Less When and Where Any Allegedly False Statements Were Made and By Whom.**

"In order to comply with the heightened pleading requirements [of Rule 9(b)], the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Forrest v. Unifund Fin. Group, Inc., No. 04 Civ. 5151 (LTS), 2005 WL 1087490, at *4 (S.D.N.Y. May 5, 2005) (quoting Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000). The Complaint is completely devoid of this information. For the most part, the Defendants appear only as abstractions or boilerplate. Moreover, to the extent fraudulent

2

statements are alleged, they are attributed indiscriminately to "Defendants," without specifying *which* defendant allegedly made the statement.[1] "Such wide-scale clumping is unacceptable." Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) (holding that "where multiple defendants are charged with fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud"); see also DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Here, the Complaint lumps a corporation, a limited liability partnership, and four individuals together throughout, failing to explain what each one of them did. See Miller v. Lazard, Ltd., 473 F. Supp. 2d 571, 589 n.6 (S.D.N.Y. 2007) (noting the "deficiency" in complaint's exclusive focus on one defendant with "little mention of acts conducted or statements made by remaining" defendants). The "specific" facts asserted against the Defendants appear—to the extent discernable—to be:

- First, IEAM received a series of promissory notes from Plaintiffs, which "Defendants" paid off in part. (Compl. ¶¶ 19-21)

- Plaintiffs sued IEAM and Mr. Mazzuto in State Court on the remaining notes. (Id. ¶¶ 22-23)

- IEAM tendered $500,000 to Plaintiffs as a settlement offer to Plaintiffs, which Plaintiffs refused. (Id. ¶¶ 24-25)

---

[1] For example, Mr. Margulies appears in exactly two paragraphs, one identifying him (on information and belief) as the Company's Chief Financial Officer for a period *ending* a full year *before* the Settlement Agreement and Press Release at issue here (Compl. ¶ 11), and the other identifying him as an individual defendant. (Id. ¶ 14) He never again appears by name in the Complaint. Likewise, Mr. O'Neill is only identified as CFO for less than three months in early 2007, as one of the "Individual Defendants," *and never again.* (Id. ¶¶ 12, 14)

- Eventually, on November 2, 2007, Plaintiffs—fully cognizant that IEAM's stock price was falling—executed a settlement agreement (the "Settlement Agreement") wherein Plaintiffs received $500,000 and 870,000 shares of IEAM stock.[2] (Id. ¶¶ 31-32)

- On November 7, 2007, IEAM issued a press release (the "Press Release") announcing, *inter alia*, the Settlement Agreement, a review of its accounting procedures, an increase of its litigation reserve, and that certain GAAP procedures were not properly followed. Paragraph 35 of the Complaint, which excerpts the Press Release in full, does not contain any allegation that there are any misstatements or omissions in the Press Release itself. (There is no such allegation *anywhere* in the Complaint.) Paragraph 35 only contains an unnecessary and inaccurate summary of the Press Release comments—unnecessary because the Press Release is then excerpted in full, and inaccurate because the text of the Press Release manifestly does not state that IEAM "had allegedly just found out about the accounting fraud." In fact, the Press Release contains no admission of accounting fraud, and in any event the very first sentence of the Press Release states that the Company was "provid[ing] an *update* on its accounting review," not that the Company had "just found out" about any accounting issues. (Id.) (emphasis added)

- The Complaint then alleges that the Company announced that Mr. Yepes was being "suspended" effective November 6, 2007, but this allegation seems apropos of nothing: Mr. Yepes does not appear again in the Complaint. (Id. ¶ 36)

- Finally, the Complaint alleges that the Company stock was worth $0.66 per share at the time Plaintiffs sold it. (Id. ¶ 37)

---

[2] Plaintiffs even fail to allege which of any Defendants were party to the Settlement Agreement, even though the circumstances surrounding the signing thereof appear to be integral to Plaintiffs' other allegations.

These are the only specific substantive allegations made against any of the Defendants. Plaintiffs argue that the Company's stock price was artificially high on the date of the Settlement Agreement when, by their own statements, they were aware that the price was falling, due to an alleged yet wholly unspecified scheme among the Defendants, but it is totally unclear if Plaintiffs are alleging anything wrongful about the Settlement Agreement itself, or whether the Press Release was issued in furtherance of the undefined scheme, or whether it revealed the alleged scheme, or whether it is merely coincidental with the illusory scheme. On this essential point the Complaint simply defies summary.

The allegations made against the Defendants are either conclusory, indeterminate, constructed in the passive voice, vague, confusing, non-specific, speculative, internally self-contradictory, or repetitive—and usually all of these things at once. (See id. ¶¶ 18, 26, 27, 33, 34, 38, 40-56, 58-61, 64, 66, 68-72, 74); Olsen v. Pratt & Whitney Aircraft, Div. Of United Tech. Corp., 136 F.3d 273, 275-76 (2d Cir. 1998) (dismissing fraud claim because complaint failed to allege the who, what, where, when and why of the alleged misrepresentations). Stretching less than a page of vague allegations across nineteen pages of the Complaint is no substitute for particularity. See Fraiberg v.Taplin, No. 88 CIV. 6540 RPP, 1990 WL 64673, at *2 (S.D.N.Y. May 8, 1990) (stating that "while Rule 9(b) may originally have been intended to promote greater clarity in fraud complaints, today many counsel cram much irrelevant detail into their securities fraud complaints. The resulting muddled and unwieldy documents are so adorned with unnecessary surplusage and background that often neither the defendants nor the Court can identify the crux of the fraud claim. Such complaints are equally violative of Rule 9(b) as those that contain no detail at all").

### B.    Plaintiffs Are Required to Establish a "Strong Inference" of Scienter.

Thirty years ago, the Supreme Court set forth the basic elements of a claim under Section 10(b) and Rule 10b-5 of the Exchange Act. Specifically, Plaintiffs must allege that the defendants: (1) made a material misleading statement or omission; (2) with scienter (a wrongful state of mind); (3) in connection with the purchase or sale of a security; (4) on which plaintiffs justifiably relied; and (5) which caused plaintiffs' economic loss. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-95 (1976); Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001) (quoting San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996)).

In an action under § 10(b) and Rule 10b-5, plaintiffs must allege a state of mind evidencing "'an intent to deceive, manipulate or defraud.'" Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000) (quoting Ernst & Ernst, 425 U.S. at 193 n. 12). The Second Circuit adheres to especially strict and rigorous pleading standards under both the PSLRA and Rule 9(b). As the Supreme Court recently noted, "this circuit's formulation of the pleading demands for scienter have historically been 'the most stringent' of all the circuits." Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 615 n. 7 (S.D.N.Y. 2008) (quoting Tellabs, 127 S. Ct. at 2508.[3]

Tellabs, the Supreme Court's most recent pronouncement about what a complaint must plead in order to survive a motion to dismiss, is "the only truly relevant case for assessing the viability of the scienter allegations" of a given PSLRA complaint. City of Brockton, 2008 WL 833943 at *7. The Supreme Court stated that the "strength of inference" inquiry was "inherently

---

[3] Note that even though this case does not involve a securities class action, § 21D(b) of the PSLRA still applies. See Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc., 985 F. Supp. 427, 430 (S.D.N.Y. 1997), rev'd on other grounds, 186 F.3d 157 (2d Cir. 1999) (stating that "there is nothing in the legislative history which indicates that the phrase 'in any private action' ... was intended to be limited to 'class actions'...."). Other notably applicable provisions of the PSLRA include § 21D(b)(3) (stay of discovery during pendency of motion to dismiss) and § 21D(c) (mandatory sanctions review for abusive litigation).

6

comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?" Tellabs, 127 S. Ct. at 2510. Accordingly, in the face of a motion to dismiss, courts must consider "plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id. Further, a plaintiff's allegations can only be considered strong enough to survive a motion to dismiss if a reasonable person would deem the inference of scienter both "cogent" and "at least as likely as any plausible opposing inference." Id. at 2504-06, 2513; Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000).

In the Second Circuit, plaintiffs must put forth more than "conclusory allegations" to satisfy the scienter pleading requirement of § 10(b) claims. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994); Miller v. Lazard, Ltd., 473 F. Supp. 2d 571, 588 (S.D.N.Y. 2007). Proof of scienter requires either "alleging facts to show that defendants had both motive and opportunity to commit fraud" or "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." See Kalnit, 264 F.3d at 138.[4]

## C. Plaintiffs' Pleadings Fail to Establish a "Strong Inference" of Scienter.

In the same manner that Plaintiffs have failed to make particularized allegations of wrongdoing, they have completely failed to establish a "strong inference" of scienter in their three 10b-5 causes of action, through a lack of factual specificity and constant reliance on broad generalizations. Plaintiffs completely fail to make adequate allegations as to any single Defendant, and so unfailingly resort to group pleading. The PSLRA, however, requires a query into the state of mind of each individual corporate officer, and not a general assertion as to the

---

[4] Moreover, "where a plaintiff relies on allegations of recklessness—as opposed to motive and opportunity—to plead fraudulent intent, the strength of the circumstantial allegations must be correspondingly greater, and the plaintiff must allege facts approaching *a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts*." In re Bayou Hedge Fund Litigation, 534 F. Supp. 2d 405, 414-415 (S.D.N.Y. 2007) (emphasis in original) (citations omitted).

7

collective knowledge of all the corporation's officers and employees. In re NTL Inc. Sec. Litig., 347 F. Supp. 2d 15, 33 (S.D.N.Y. 2004) (stating that "the general allegation that, 'knowledge of the accounting improprieties may be imputed to the company's officers and directors who are involved in the day-to-day operations of the company' does not give rise to the necessary inference of fraudulent intent (scienter), in the absence of allegations of fact from which one could infer that the alleged accounting improprieties are either being committed by the officer or were reported to him"); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 72 (2d Cir. 2001) (dismissing complaint because "Plaintiffs do not plead that these individuals had access to particular, identified internal reports that would have alerted them to a deliberate (and hence fraudulent) misapplication of the rule").[5]

To impute knowledge to the Defendants, Plaintiffs assert, for example, that:

- "IEAM's stock was being artificially inflated due to fraud and misrepresentation . . . committed by IEAM, the Individual Defendants, and Beckstead." (Compl. ¶ 26)

- "Plaintiff was falsely induced into believing that the rising stock price was due to actual transactions." (Id. ¶ 27)

- "At all relevant times, Defendants carried out a plan, scheme and course of conduct . . . . Defendants, and each of them, took the actions set forth herein." (Id. ¶ 38)

---

[5] Just judging from the contents of the Press Release, the Complaint may be alleging that IEAM's announcement of regarding an accounting review and GAAP irregularities constitutes evidence of a fraudulent scheme to reduce IEAM's stock price causing damages to Plaintiffs. See Compl. ¶ 35. Even taking the alleged facts as true and in a light most favorable to Plaintiffs, this Circuit has held, for example, that the allegation of a violation of GAAP, without more, does not meet the scienter pleading requirements of 10(b)(5) or the PSLRA. See Chill v. General Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996); In re Hudson Technologies, Inc. Sec. Litig., Civ. No. 98-1616, 1999 WL 767418 (S.D.N.Y. September 28, 1999) (granting defendant's motion to dismiss under 9(b), 12(b)(6) and the pleading requirements of the PSLRA because "failure to comply with standard accounting practices, coupled with later revisions of financial statements does not alone constitute circumstantial evidence of misconduct or recklessness").

- "The dissemination of false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein is the result of the collective actions of the Company, Individual Defendants, and Beckstead."

(Id. ¶ 42)

These allegations are mere "mud-throwing" and, as such, plainly deficient. Plaintiffs repeatedly describe a "plan" or a "scheme" to defraud Plaintiffs, but never once describe how, when, amongst whom the scheme was formed, or even allude to any reason why such scheme would exist. Accordingly, the Complaint fails to support any inference of scienter, let alone a strong inference of scienter. Here, like in Garber v. Legg Mason, Inc., Plaintiffs "plead absolutely no facts supporting the assertion that defendants had the motive and opportunity to commit fraud. They do not even plead that defendants acted with self-interest. Puzzlingly, a discussion of motive is entirely absent." 537 F. Supp. 2d 597, 618 (S.D.N.Y. 2008); Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC, 474 F. Supp. 2d 505, 520 (S.D.N.Y. 2007). As the entire *raison d'être* for a fraudulent scheme against Plaintiffs is missing from the Complaint, the series of seemingly random, coincidental, and unrelated events listed in the Complaint do not add up to anything. See City of Brockton, 2008 WL 833943 at *11 (stating that "zero plus zero plus zero plus zero plus zero" does not add up to an inference of fraud).

As this Court has stated, "after Tellabs, any inference of [] scienter to be drawn from the allegations of the complaint must be both 'cogent' and 'at least as compelling' as any non-culpable inference that defendant suggests could be drawn from the facts. 'Cogent' means 'compelling or convincing.'" Id. (citations omitted) As in City of Brockton, "[n]o fact or facts alleged in the [] Complaint compels the inference that plaintiffs would have the Court draw" here—that Defendants were engaged in a scheme to defraud the Plaintiffs. Id. Here, there is

virtually no basis in the Complaint from which any inference of scienter may be drawn, much less any compelling or convincing basis.

### D. Plaintiffs' Pleadings Fail to Establish Loss Causation.

In keeping with the vague and unsupported character of the Complaint, Plaintiffs fail to establish that Defendants, or any of them, caused Plaintiffs' loss. Plaintiffs merely allege that "[h]ad Plaintiffs known the truth regarding IEAM's financial results, which were not disclosed by defendants, Bui and TFIC would have taken the cash or stock equivalent of $2,479,500 and not have agreed to accept 870,000 shares of IEAM stock." (Compl. ¶ 60) The law in this Circuit is well-established that such allegations in themselves fail to establish loss causation. In re Salomon Smith Barney Mut. Fund Fees Litigation, 441 F. Supp. 2d 579, 590 (S.D.N.Y. 2006), for example, held that "Plaintiffs' allegations that Defendants' omissions caused them to make investment choices they now regret in allegedly poorer quality, high-expense funds and that they would not have entered into these transactions had they known the information withheld by Defendants constitutes transaction causation," but "this assertion makes out transaction causation-not loss causation." See also Arduini/Messina P'ship v. National Med. Fin. Servs. Corp., 74 F. Supp. 2d 352 (S.D.N.Y. 1999) (averring that, but for defendants' material omissions, plaintiffs would not have invested in the securities is sufficient to plead only transaction causation or reliance); Emergent Capital Inv. Mgmt. v. Stonepath Group, 343 F.3d 189, 198 (2d Cir. 2003) (stating that "[w]hile [allegations of transaction causation] may explain why plaintiff purchased the [defendant's] stock, it does not explain why it lost money on the purchase, the very question that the loss causation allegation must answer"). The Complaint does not even adequately allege loss causation and, thus, an essential element of Plaintiffs' 10b-5 claim is missing.

## II.   PLAINTIFFS' ALLEGATIONS OF SECTION 20(a) LIABILITY SHOULD BE DISMISSED.

Plaintiffs' control person claims, the Fourth Cause of Action in the Complaint, should also be dismissed as wholly flawed. First, as argued above, since plaintiffs have not properly pled a primary violation of the federal securities laws, their derivative claim for controlling person liability under section 20(a) must be dismissed. Elliott Associates, L.P. v. Hayes, 141 F. Supp. 2d 344, 360-361 (S.D.N.Y. 2000); The High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 428 (S.D.N.Y. 1998). Without the support of those violations, Plaintiffs' Section 20 claim is orphaned, and accordingly must be dismissed as a matter of law.

Second, leaving aside the utter failure to plead primary violations, Plaintiffs fail to allege that any of the Defendants are in fact control persons. In order to meet the control element, "a plaintiff must show a primary violation by the controlled person [,] ... control of the primary violator by the targeted defendant[,] ... and ... that the controlling person was in some meaningful sense a culpable participant in the fraud perpetuated by the controlled person." S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) (citations omitted); In re Blech Securities Litigation, 961 F. Supp. 569, 586 (S.D.N.Y. 1997) (citing Ross v. Bolton, 83 Civ. 8244 (WK), 1989 WL 80428, at *2 (S.D.N.Y. Apr.4, 1989) (stating that defendant must possess actual control over the transactions in question)).

Plaintiffs do not even allege properly that the Defendants exercised *actual control* over the primary violator such that dismissal is required. The Complaint again utterly fails by failing to allege any reports, memoranda, e-mails, letters, or other documents or communications which would have put any of the Defendants on notice of any fraud. Nowhere in the Complaint do Plaintiffs even allege that any of the Defendants themselves made any "false and misleading

statements." Indeed, the Complaint is devoid of any reference whatsoever to individual statements, except for the Press Release, which is attributed generically to IEAM, and further, is not even alleged to be false in any regard. Not only does the Complaint therefore lack specificity, it completely fails to plead any conduct by any of the Defendants that would support a strong inference of either reckless or knowing conduct amounting to fraud. Because nothing in the Complaint establishes a valid control person claim, Plaintiffs' Section 20 allegations must be dismissed.

### III. PLAINTIFFS' ALLEGATIONS OF COMMON LAW FRAUD SHOULD BE DISMISSED.

For the reasons set forth herein, none of Plaintiffs' common law fraud claims, which in Federal Court must meet the requirements of Rule 9(b), are sustainable. Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (stating that "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty-statutory, common law, tort, contractual, or fiduciary." ); see also Avnet, Inc. v. American Motorists Insurance Co., 684 F. Supp. 814, 815 (S.D.N.Y. 1988).[6] Even under substantive New York law, the Fifth Cause of Action is wholly inadequate. The elements of a cause of action for fraud under New York law are: (1) a misrepresentation of material existing fact, (2) which was false and known to be false by the defendant when made, (3) for the purpose of inducing plaintiffs' reliance, (4) plaintiffs' justifiable reliance on the alleged misrepresentation or omission, and (5) compensable damages. New York University v. Continental Insurance Co., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 289

---

[6] Even under New York law, the pleading is totally deficient. CPLR 3016(b) requires that **each of the elements of fraud be pleaded with particularity**, and a pleading that fails to do so is fatally defective and must be dismissed. See, e.g., Walden Terrace, Inc. v. Broadwall Management Corp., 213 A.D.2d 630, 630, 624 N.Y.S.2d 217, 218 (2d Dep't 1995) (dismissing fraud claim which "did not set forth in detail the circumstances constituting the wrong."); Michaelson v. Scaduto, 205 A.D.2d 507, 507, 612 N.Y.S.2d 659, 660 (2d Dep't 1994) ("Bare allegations of fraud without any allegation of the details constituting the wrong are clearly insufficient to sustain such a cause of action.") (citations omitted).

(1995); accord Stuart Silver Associates, Inc. v. Baco Development Corp., 245 A.D.2d 96, 665 N.Y.S.2d 415, 417 (1st Dep't 1997). *Plaintiffs failed to allege a single element of common law fraud.*

In addition, because all of Plaintiffs' federal law claims should be dismissed, Plaintiffs' pendent state law claim should likewise be dismissed for lack of jurisdiction. See Arduini/Messina Partnership v. National Medical Financial Services Corp., 74 F. Supp. 2d 352, 363 (S.D.N.Y. 1999) (holding that "[i]n light of the dismissal of plaintiffs' federal cause of action . . . I decline to exercise supplemental jurisdiction over plaintiffs' state law fraud claims") (citing 28 U.S.C. § 1367(c)(3) and United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint with prejudice.[7]

Dated: New York, New York
       May 9, 2008

                                        GANFER & SHORE, LLP

                                        By: *[signature]*
                                            Thomas J. Curran (TC-2020)
                                            Allen L. Finkelstein (AF-2440)
                                            William D. McCracken (WM-1622)
                                        360 Lexington Avenue
                                        New York, New York 10017
                                        (212) 922-9250

                                        *Attorneys for Industrial Enterprises Of America, Inc., James Margulies, and Dennis O'Neill*

---

[7] Furthermore, a court may deny leave to amend where any amendment would be futile. See Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990).

To: Michael C. Barrows, Esq.
BARROWS & ASSOCIATED PLLC
*Attorney for Plaintiffs*
330 Madison Avenue, 6th Floor
New York, New York 10017
(212) 573-0979

Leon Borstein, Esq.
BORSTEIN & SHEINBAUM
*Of Counsel*
420 Lexington Avenue, Suite 2920
New York, New York 10170
(212) 687-1600