UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,                          Case No.: 08 CV 0583(VM)

                        Plaintiff,                **NOTICE OF MOTION**

            –against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

                        Defendants.
------------------------------------------------------------------x

PLEASE TAKE NOTICE, that upon the annexed affirmation of Michael C. Barrows, Esq, affirmed in June 23, 2008, and upon all the exhibits attached thereto, and the pleadings herein, plaintiffs will move this Court at the United States Courthouse located at 500 Pearl Street, New York, New York 10007, before Judge Victor Marrero, United States District Judge, on July 14, 2008 at 9:30 a.m. or as soon thereafter as counsel may be heard,  for an order pursuant to Rule 55 of the Federal Rules of Civil Procedure granting a default judgment as to liability against defendant, JOHN MAZZUTO, awarding $1,991,329.19 on plaintiffs' first cause of action plus New York statutory interest in an amount of 9 percent per annum from November 6, 2007, awarding damages on the remaining causes of action as determined at Inquest, granting plaintiffs the costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

Dated: New York, New York
          June 23, 2008

                                        BARROWS & ASSOCIATE, PLLC.


                                        By:_____s/ Michael C. Barrows_____
                                            Michael C. Barrows, Esq. (MB 5416)
                                            330 Madison Ave., 6th floor
                                            New York, NY 10017
                                            Tel. (212) 573-0979
                                            Fax. (212) 573-0983

                                        Of Counsel

                                        Leon B. Borstein, Esq.
                                        420 Lexington Ave., Suite 2920
                                        New York, NY 10170
                                        Tel.  (212) 687-1600
                                        Fax.  (212) 687-8710

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,                          Case No.: 08 CV 0583(VM)

                       Plaintiff,          **AFFIRMATION OF COUNSEL
                                                  IN SUPPORT OF DEFAULT
                                                  JUDGMENT**
      –against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

                    Defendants.
----------------------------------------------------------------------x

      Michael C. Barrows, an attorney duly admitted to practice law in the courts of the State
of New York and the Southern District of New York, hereby affirms the following under the
penalties of perjury

      1.      I am the attorney of record for plaintiffs, TRINITY BUI and TRINITY
FINANCING INVESTMENTS CORPORATION, and, as such, I am fully familiar with all of
the facts and circumstances of this matter related hereinafter.

      2.      I submit this affirmation in support of plaintiffs' application for an order pursuant
to F.R.C.P. 55, directing that a default judgment be entered as to liability against defendant
JOHN MAZZUTO (hereinafter "MAZZUTO"), awarding $2,583,900 on plaintiffs' first cause of
action plus New York statutory interest in an amount of 9 percent per annum from November 6,
2007 (the date of the wrong), awarding damages on the remaining causes of action as determined
at Inquest, awarding plaintiffs the cost and disbursements of this action, and for such other relief
as the Court deems just and proper.

1

3.      This is an action to recover damages for fraud arising under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, (15 U.S.C. § 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and common-law fraud under applicable New York State Law.  A copy of the Summons and Complaint in the instant action are collectively annexed hereto as Exhibit A.

4.      On March 29, 2008, the Summons and Complaint in the instant action were served upon MAZZUTO by personally serving a copy of the aforementioned papers upon him at his residence located at 11503 Green Bayberry Drive, Palm Beach Gardens, Florida, 33418. A copy of the Affidavit of Service is annexed hereto as Exhibit B.

5.      More than twenty (20) days have elapsed since service of the Summons and Complaint upon MAZZUTO.  To date, no appearance, answer or reply has been forthcoming either from MAZZUTO or his attorney.  As such, it is apparent that MAZZUTO will not proceed with a defense and has defaulted.

6.      A certificate of default stating that the defendant was properly served with the complaint and failed to answer/appear, signed and stamped by the Clerk of the Court is annexed hereto as Exhibit C.

7.      Defendant has been given reasonable notice that this application will be presented for default judgment on July 14, 2008 by service of such motion upon MAZZUTO.  Such service was made on June 25, 2008 by first-class mail sent to MAZZUTO at his above-mentioned residence.  A copy of the Affidavit of Service is annexed hereto.

8.      MAZZUTO  is neither an infant nor and incompetent person.

9.      MAZZUTO is not in the active service of the armed forces.

2

10.     No part of the judgment sought has been paid.

11.     Plaintiffs respectfully submit  financial reports from yahoo finance(finance.yahoo.com) and pinkslips.com indicating that the price of Industrial Enterprises of America, Inc. (hereinafter "IEAM") stock on November 2, 2007, the date the settlement was executed, was $2.97. These reports are annexed as Exhibit D.

12.     Pursuant to the settlement agreement, plaintiffs' were to receive 870,000 shares of free-trading common stock of IEAM, valued at $2,583,900 (870,000 shares x $2.97), on the day of execution of such agreement.  Exhibit A, ¶31.

13.     The closing of the settlement agreement took place on November 6, 2007, at which time plaintiffs received the 870,000 shares of IEAM common stock. Exhibit A, ¶32.

14.     On November 7, 2007, IEAM's stock plummeted due to an announcement that the IEAM, MAZZUTO, and the remaining named defendants engaged in various forms of economic fraud, including, fraudulent bill-and-hold transactions, accounting practices, and other sham transactions. Exhibit A, ¶35.

15.     Upon learning of such fraud, plaintiffs immediately began to sell off their stock in IEAM.  Exhibit A, ¶37.  Plaintiffs submit confirmation slips for the sale of all IEAM common stock, indicating the total amount received for the sale of their IEAM stock as $592,570.81. These confirmation slips are annexed as Exhibit E.

16.     Plaintiffs have been damaged in an amount of $1,991,329.19 ($2,583,900 - $592,570.81) by the acts and omissions of MAZZUTO and the remaining named defendants.

17.     Upon information and belief and at all relevant times, MAZZUTO was the Chairman, Director, Secretary, and Chief Executive Officer of IEAM.

3

18.     MAZZUTO actively participated and engaged in the economic fraud, including, without limitation, the fraudulent bill-an-hold transactions complained of in the annexed Complaint.

19.     Plaintiffs respectfully submit as Exhibit F, a proposed form of default judgment; (i) awarding damages on the first cause of action in an amount of $1,991,329.19 plus interest at 9 percent per annum from November 9, 2007; (ii) awarding damages on the remaining causes of action as determined at Inquest; and (iii) awarding costs and disbursements associated with this action.

WHEREFORE, it is respectfully requested that this Court issue an order pursuant to F.R.C.P. 55  directing default judgment against MAZZUTO as to liability, awarding $1,991,329.19 plus interest at 9 percent per annum from November 6, 2007, awarding damages on the remaining causes of action as determined at Inquest, and awarding costs and disbursements associated with this action.

Dated: New York, New York
        June 23, 2008


                                    s/ Michael C. Barrows
                                Michael C. Barrows, Esq. (MB 5416)

# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ NEW YORK

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,

### V.

INDUSTRIAL ENTERPRISES OF AMERICA,
INC., BECKSTEAD AND WATTS, LLP.,
JOHN MAZZUTO, JAMES MARGUILES,
DENNIS O'NEILL, and JORGE YEPES,

TO: (Name and address of defendant)

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 08 CV 0583

*JUDGE MARRERO*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

BARROWS & ASSOCIATES, PLLC.
330 MADISON AVENUE, 6TH FLOOR
NEW YORK, YEW YORK 10017

an answer to the complaint which is herewith served upon you, within _____ THIRTY (30) _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

_____
CLERK

_____
(BY) DEPUTY CLERK

JAN 2 3 2008

_____
DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,

Plaintiff,

–against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

Defendants.

-----------------------------------------------------------------x

**JUDGE MARRER**

Case No.: **08 CV 0583**

**COMPLAINT**

JURY TRIAL DEMANDED



JAN 2 3 2008

U.S.D. ____ Y.
CASHIERS

Plaintiffs, TRINITY BUI and TRINITY FINANCING INVESTMENTS CORPORATION, by their undersigned attorneys, for their complaint against defendants allege the following:

## NATURE OF ACTION

1.      This is a federal securities action seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (hereinafter the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C § 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and common-law fraud under applicable New York State Law,

3.      This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

1

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C § 78aa and 28 U.S.C. 1391(b), as a substantial part of the conduct complained of herein occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the National Securities Exchange.

## PARTIES

6.      At all times relevant hereto, Plaintiff, TRINITY BUI (hereinafter "Bui"), was an adult individual residing at 300 East 55th Street, #14D, New York, New York, 10022.

7.      At all times relevant hereto, Plaintiff, TRINITY FINANCING INVESTMENTS CORPORATION (hereinafter "TFIC"), was a Delaware corporation with its principal office located at 300 East 55th Street, # 14D, New York, New York 10022.

8.      At all times relevant hereto, Defendant, Industrial Enterprises of America, Inc. (hereinafter "IEAM" or the "Company"), was a Nevada Corporation with its principal offices located at 711 Third Avenue, Suite 1505, New York, New York, 10017. IEAM is an automotive aftermarket supplier of anti-freeze, motor oil, and other chemical products used in the automotive industry. IEAM was formally known as Advanced Bio/Chem, Inc.

9.      At all relevant times, IEAM's stock was listed on the NASDAQ Bulletin Board under the ticker symbol "IEAM.OB" and the NASDAQ Capital Market under the ticker symbol "IEAM".

10.      Upon information and belief, Defendant, JOHN MAZZUTO (hereinafter "Mazzuto"), was the Company's Chairman, Director, Secretary, and Chief Executive Officer since in or around

2

August 2004 to December 31, 2007. Mazutto also served as the Company's Chief Financial Officer from December 2006 to March 19, 2007, and from May 2007 to September 2007.

11.    Upon information and belief, Defendant, JAMES MARGULIES (hereinafter "Margulies"), was the Company's Chief Financial Officer from in or around December 2005 to December 2006.

12.    Upon information and belief, Defendant, DENNIS O'NEILL (hereinafter "O'Neill), was the Company's Chief Financial Officer from March 19, 2007 to May 2007.

13.    Upon information and belief, Defendant, JORGE YEPES (hereinafter "Yepes"), was the Company's Chief Financial Officer since being appointed to that position on or about September 4, 2007.

14.    Mazzuto, Yepes, O'Neill, and Margulies are collectively referred to hereinafter as the "Individual Defendants".

15.    Upon information and belief and at all relevant times hereto, Defendants, BECKSTEAD AND WATTS, LLP (hereinafter "Beckstead"), located in Las Vegas, Nevada, were the Company's accountants.

**Applicability of Presumption of Reliance:**
**Fraud-on-the-Market Doctrine**

16.    At all relevant times, the market for IEAM's common stock was an efficient market for the following reasons, among others:

(a)    IEAM's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Capital Market and Bulletin Board, highly efficient and automated markets;

(b)    During the relevant period, on average, several hundreds of thousands of shares of

3

IEAM stock were traded on a weekly basis, demonstrating a very active and broad market for IEAM stock and permitting a very strong presumption of an efficient market;

(c)     As a regulated issuer, IEAM filed with the SEC periodic public reports during the relevant period;

(d)     IEAM regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     IEAM was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the relevant period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in IEAM stock at all times during the Class Period; and

(g)     Unexpected material news about IEAM was rapidly reflected in and incorporated into the Company's stock price during the relevant period.

17.     As a result of the foregoing, the market for IEAM's common stock promptly digested current information regarding IEAM from all publicly available sources and reflected such information in IEAM's stock price. Under these circumstances, Bui and TFIC suffered injury through it's purchase and/or other acquisition of IEAM's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

18. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements"when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of IEAM who knew that those statements were false when made.

## FACTS COMMON TO ALL CAUSES OF ACTION

19. Starting in 2004 and 2005 Plaintiffs' made the following relevant loans to IEAM:

(a) Four $25,000 tranches totaling $100,000 evidenced by four $25,000 convertible notes (hereinafter "100K Notes");

(b) $500,000 evidenced by four convertible notes of $100,000, $50,000, $50,000 and $300,000 (hereinafter "500K Notes");

(c) $200,000 evidenced by a $200,000 promissory note(hereinafter "200K Note");

(d) $350,000 evidenced by a $350,000 promissory note (hereinafter "350K Note").

20. Prior to the end of 2005, Defendants paid off the 200K Note.

5

21.     In or around the end of 2005, Plaintiffs demanded that the Defendants pay off the 350K Note and give them the right to convert on the 100K Note and 500K Note pursuant to the terms of the notes.  Defendant IEAM and the Individual Defendants refused to pay off the 350K Note and refused to permit conversion of the 100K Note and 500K Note.

22.     In response to this refusal, Plaintiffs initiated a lawsuit in the Supreme Court of the State of New York, County of New York captioned <u>Trinity Bui and Trinity Financing Investments Corp. v. Industrial Enterprises of America, Inc. and John Mazzuto</u>, Index Number 117290/05.

23.     An Amended Complaint was filed in the aforementioned action seeking, *inter alia*, the right to convert the Notes pursuant to the terms thereof.

24.     In or around March 2006, IEAM tendered to Plaintiffs a check for $500,000 representing payment upon the 500K Note.

25.     Due to the rising IEAM stock pricing, Plaintiffs refused to settle their 500K note claim for an amount of $500,000 and demanded that Defendants acknowledge their right to convert the notes 100K Note and 500K Note to shares of stock in IEAM.

26.     Unbeknownst to Plaintiffs, IEAM's stock price was being artificially inflated due to fraud and misrepresentation, including a phony series of bill-and-hold transactions and other revenue-recognition manipulations committed by IEAM, the Individual Defendants, and Beckstead. These "sham transactions" constitute violations of GAAP.

27.     Plaintiff was falsely induced into believing that the rising stock price of IEAM was due to actual transactions.

28.     Plaintiffs then determined to pursue their legal rights to convert the notes to shares of IEAM and retained counsel at a cost of $500,000.

29.    In or around October 2007, IEAM stock was trading at approximately $4.25 per share and Defendants commenced negotiations to settle Plaintiffs' litigation demands. IEAM stock then dropped to approximately $3.55 per share.

30.    On or about November 2, 2007, for reasons unknown to Plaintiffs, the stock price of IEAM began to drop significantly to $2.97, causing Plaintiff to accepted a settlement agreement, whereby TFIC, Bui, and IEAM would discontinue and/or dismiss all claims against each other with prejudice for the sum of $3,083,000.

31.    Pursuant to this settlement agreement, TFIC and Bui were to receive $500,000 and 870,000 shares of free-trading common stock of IEAM, with a value of $2,583,900 (870,000 shares x $2.97 at the time the settlement agreement was executed on 11/2/07).

32.    The closing for the settlement agreement occurred on November 6, 2007 wherein Bui and TFIC received the 870,000 shares of free-trading commons stock of IEAM and a check in the amount of $500,000.

33.    At the time of the settlement, all Defendants knew or should have known that the stock was artificially inflated due to fraud, including, without limitation, a series of fraudulent bill-and-hold transactions, accounting practices, and other sham transactions.

34.    Upon information and belief, Defendants perpetrated, knew of, or uncovered this economic fraud prior to settlement but intentionally failed to tell that information to Plaintiffs.

35.    On November 7, 2007, <u>one day after closing on the settlement agreement</u>, the Company issued an announcement that it had allegedly just found out about the accounting fraud. The announcement states in relevant part:

7

Industrial Enterprises Provides Accounting Update
Wednesday November 7, 4:49 pm ET
NEW YORK, Nov. 7, 2007 (PRIME NEWSWIRE) -- Industrial Enterprises of America, Inc. (NasdaqCM:IEAM - News) today provided an update on its accounting review for the Company's fiscal year ended June 30, 2007, and made certain other announcements.

During the year-end annual audit, it has come to the Company's attention that a supplier to the Company may be required to be accounted for as a Variable Interest Entity (VIE) due to the fact that the Company is its sole customer. Based upon further evaluation by both the Company and its auditors, the VIE does not appear to be material to the overall operations of the Company and consequently does not appear to require an audit or to be consolidated into the Company's financials. The Company's previous auditors are now reviewing this relationship during the fiscal 2006 time period and are evaluating whether the VIE needs to be consolidated into the Company's fiscal 2006 financials. Company management believe that the auditors will concur with the 2007 accounting treatment of
the VIE, but no conclusion has yet been made. Management cautions that the filing of the 2007 Form 10KSB is contingent upon the Company filing the restated 2006 annual report.

Also, during the Company's internal review of its accounting policies, it has determined that its reserve for current litigation should be increased by an additional $9.5 million, to $13.5 million.

Additionally, the Company has determined, after reviewing its bill and hold transactions for fiscal 2007, that the Company did not properly follow GAAP revenue recognition procedures. Therefore, the bill and hold transactions for the quarter ended December 31, 2006 in the amount of approximately $3.1 million will be cancelled, and the bill and hold sales for the quarter ended March 31, 2007 in the amount of $4.9 million will also be cancelled. Such bill and hold sales represented $1.3 million of EBITDA in the quarter ended December 31, 2006 and $3.5 million of EBITDA in the quarter ended March 31, 2007. Also, the bill and hold transactions that were to take place in the 4th quarter have been cancelled. These sales would have accounted for EBITDA in excess of $1.5 million. Based on the cancellation of the fourth quarter bill and hold sales, the EBITDA guidance
for the quarter is no longer applicable. Of the total cancelled bill and hold revenue, $1.6 million will be reflected in the first quarter of 2008 representing $1.1 million in EBITDA and $1.2 million in revenue will be recorded in the second quarter of 2008 representing EBITDA of approximately $400,000. The margins on these sales were unusual because the Company was able to sell finished goods inventory that the Company had purchased at distress prices. It is expected that the Company's customers will continue to execute bulk transactions in the future; however, the

8

margins from the previous bill and hold transactions are not sustainable.

All bill and hold purchases were paid in full, and cash was received prior to June 30, 2007, but because the buyers were unable to take delivery of their merchandise, the Company was forced to cancel these transactions and will reflect an approximate $8 million in liabilities on its books at the year ended June 30, 2007. The buyers of the bulk purchases have agreed to settle their potential claims for these cancelled sales for 2.4 million shares of restricted stock and the above purchase and delivery of product. This settlement will remove the liability during the second quarter ended December 31, 2007. Additionally, Industrial Enterprises has the option to repurchase these shares at current market prices.

The company also wishes to announce the settlement of all pending litigations with Trinity Bui and Trinity Financing Investments Corp. (TFIC), relating primarily to certain convertible notes and warrants issued to Ms. Bui and TFIC. Pursuant to the settlement agreement, the parties have exchanged releases and will dismiss all outstanding claims and counterclaims with prejudice. The company has paid $500,000 in cash and has issued 870,000 shares of common stock, representing the conversion of certain notes, the exercise of a warrant, and other consideration. The shares issued are freely tradable but are subject to certain daily transfer restrictions. Under the terms of the settlement, all notes issued to Ms. Bui and TFIC have been converted and/or cancelled, and all unexercised warrants remain valid and exercisable, including certain warrants (those issued on or before July 15, 2004) that had been taken off the Company's books but which will now be placed back on the books.

Also, during the year end annual audit, it was determined that certain litigation expenses paid by the Company's CEO John Mazzuto, in defense of litigation against the Company and Mr. Mazzuto personally, were not recorded as an expense by the Company and that such expenses should be reimbursed to Mr. Mazzuto. The Company and its auditors have determined that such payments should have been recorded as an expense by the Company and reflect a liability to repay Mr. Mazzuto approximately $1.2 million. Mr. Mazzuto has agreed to accept 500,000 shares of restricted stock as settlement for these paid legal expenses.

\* \* \* \*

According to CEO John Mazzuto, "We take our responsibility to provide complete and accurate financial information seriously and are taking proactive steps that we believe are appropriate under these circumstances. Given the current price of the Company's common stock, the Company will add additional debt over and above the $10 million recently added, to increase the pace of the share buyback as well as to expand operations."

9

36.    Later that day it was announced that defendant Yepes was being suspended by the Company effective November 6, 2007, in connection with an internal integrity review.

37.    The November 7, 2007 adverse announcements caused the Company's stock to plummet to approximately $.66 per share at the time of Plaintiffs' sale of the Company's stock. Then at the time of Plaintiffs' sale of the Company's stock on the open market, Plaintiffs received only $586,605 from the sale of the Company's stock. Accordingly, Plaintiffs' total settlement was $1,086,605, a mere 35% of the agreed upon settlement value of $3,083,000.

### FIRST CAUSE OF ACTION
### Violation of Section 10(b) Of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

38.    At all relevant times, Defendants carried out a plan, scheme and course of conduct which was intended to and, did: (i) deceive Bui and TFIC, as alleged herein; (ii) induce Bui and TFIC to enter into a settlement agreement whereby they acquired 870,000 share of IEAM common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39.    Had Bui and TFIC been aware of this adverse information they would have taken the cash or stock equivalent of $2,583,900 and not have agreed to accept 870,000 shares of IEAM stock.

40.    Each of the Individual Defendants, as senior executive officers, agents, and/or directors of IEAM and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations, and connections with other corporate officers and

employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and where being concealed from Plaintiffs.

41.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

42.    The dissemination of false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein is the result of the collective actions of the Company, Individual Defendants, and Beckstead. Each of the above officers and directors of IEAM and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued, and approved or ratified these statements, in violation of the federal securities laws.

11

43.    As officers, directors, and controlling persons of a publicly-held company whose securities were and are registered with the United States Securities and Exchange Commission pursuant to the Exchange Act, and that was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

44.    The Individual Defendants and Beckstead drafted, prepared, and/or approved of various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.

45.    Because of the Individual Defendants Board Membership and/or executive and managerial positions with IEAM, each of the individual defendants had access to the adverse undisclosed information about IEAM's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about IEAM and its business, and issue or adopted Company, materially false and misleading.

46.    The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, and Beckstead, were able to and

12

did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the relevant period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

47.    Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on Bui and TFIC by disseminating materially false and misleading statements and/or concealing material adverse facts. Defendants, (i) deceived Bui and TFIC regarding IEAM's business, operations, management and the intrinsic value of IEAM's securities; (ii) had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them; (iii) knowingly or recklessly made material misrepresentations for the purpose and effect of inducing Plaintiffs into agreeing to settle their claims against IEAM for $500,000 and 870,000 shares of free-trading common stock, with an value of $2,583,900 (870,000 shares x $2.97 at the time the settlement agreement was executed on 11/2/07) rather than accepting a cash or increased stock settlement in the amount of $3,083,000; (iv) did induce Plaintiff to enter into a settlement agreement for IEAM stock at the artificially inflated price.

48.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud

13

and deceit upon Bui and TFIC in an effort to maintain artificially high market prices for IEAM's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

49.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Bui and TFIC, who acquired IEAM common stock pursuant to the Agreement, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

50.    All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of IEAM as specified herein.

52.    These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure Bui and TFIC of IEAM's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about IEAM and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaging in transactions, practices and a course of business that operated as a fraud and deceit upon Bui and TFIC in connection with the Settlement Agreement.

14

53.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives, directors, and/or agents at the Company and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination to Bui and TFIC of information that they knew or recklessly disregarded to be materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from Bui and TFIC, IEAM's operating condition and future business prospects and supporting the artificially inflated price of its common stock so as to effect the signing of the Settlement Agreement.

55.     As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of IEAM's common stock was artificially inflated at the time of the signing of the Settlement Agreement.

57.     Plaintiffs relied upon the inflated stock price when negotiating and entering into the settlement agreement.

58.     In ignorance of the fact that market prices of IEAM's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during relevant time period, Bui and TFIC acquired IEAM common stock during the such period at artificially high prices and were or will be damaged thereby.

59.     At the time of said misrepresentations and omissions, Bui and TFIC were ignorant of their falsity, and believed them to be true. Had Plaintiffs known the truth regarding IEAM's financial results, which were not disclosed by defendants, Bui and TFIC would have taken the cash or stock equivalent of $2,479,500 and not have agreed to accept 870,000 shares of IEAM stock.

60.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with the acquisition of IEAM common stock pursuant to the Settlement Agreement.

16

62.    This action was filed within two years of discovery of the fraud and within five years of the Plaintiffs acquisition of securities giving rise to the cause of action.

63.    By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but believed to be not less than $2,000,000 plus interest.

## SECOND CAUSE OF ACTION
### Violation of Section 10(b) Of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

64.    Had Plaintiffs been aware of the fraudulent actions of IEAM, Individual Defendants, and Beckstead, resulting in an artificially inflated stock price on March 2005 they would not have incurred legal fees in an amount of $500,000.

65.    By reason of the foregoing, Plaintiffs have been damaged in an amount of $500,000 plus interest.

## THIRD CAUSE OF ACTION
### Violation of Section 10(b) Of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

66.    But for the fraudulent actions of Defendants, Plaintiff would have accepted the $500,000 tendered in March 2006.

67.    By reason of the foregoing, Plaintiffs is entitled to interest upon the $500,000 from March 2006 to November 2, 2007.

## FOURTH CAUSE OF ACTION
### Violation of Section 20(a) Of The Exchange Act Against the Individual Defendants

68.    The Individual Defendants acted as controlling persons of IEAM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency,

17

and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Bui and TFIC contends are false and misleading.

69.     The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Bui and TFIC to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

70.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, IEAM, the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

72.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendant's wrongful conduct, Bui and TFIC suffered damages in connection with their acquisition of the Company's common stock pursuant to the Settlement Agreement.

73.     This action was filed within two years of discovery of the fraud and within five years of each the Plaintiffs acquisition of securities giving rise to the cause of action.

18

## FIFTH CAUSE OF ACTION
### Common-Law Fraud Against All Defendants

74. The actions alleged herein constitute common-law fraud under applicable New York law.

75. By reason of the foregoing, Plaintiffs have suffered damages and continue to suffer damages in an amount to be determined at trial but believed to be not less than $2,000,000 plus interest.

WHEREFORE, on all causes of action, Plaintiffs pray for relief and judgment, as follows:

(a) Awarding compensatory damages in favor of Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(b) Awarding Plaintiff its reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(c) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

BARROWS & ASSOCIATED PLLC

By:_____
Michael C. Barrows, Esq. (MB 5416)
330 Madison Avenue, 6th Floor
New York, New York 10017
(212) 573-0979

19

Of Counsel

Leon Borstein, Esq.
BORSTEIN & SHEINBAUM
420 Lexington Avenue, Suite 2920
New York, New York 10170
(212) 687-1600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE MARRERO**

**08 CV 0583**

Plaintiff  TRINITY BLK and TRINITY
FINANCING INVESTMENTS CORP.

INDUSTRIAL ENTERPRISES OF AMERICA
BECKSTEAD and WATTS LLP JOHN MAZZUTO
JAMES MARGULIES and DENNIS O'NEILL and
Defendant  JORGE TEPES

ase No.

**Rule 7.1 Statement**

Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local
General Rule 1.9] and to enable District Judges and Magistrate Judges of the Court
to evaluate possible disqualification or recusal, the undersigned counsel for
___Plaintiffs_____ (a private non-governmental party) certifies
that the following are corporate parents, affiliates and/or subsidiaries of said party,
which are publicly held.

NONE

JAN 2 3 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Date:  1/25/08

Signature of Attorney

Attorney Bar Code:  MB 5416

Form Rule7_1.pdf

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
## Southern District of New York

Index Number: 08CV0583

Plaintiff:
**TRINITY BUI AND TRINITY FINANCING INVESTMENTS CORPORATION**
vs.
Defendant:
**INDUSTRIAL ENTERPRISES OF AMERICA INC, ET AL.,**

**ORIGINAL**

For:
Michael C. Barrows, Esquire
BARROWS & ASSOCIATED PLLC
330 Madison Avenue 6th Floor
New York, NY 10017

Received by NICOLETTI & HARRIS INC on the 26th day of March, 2008 at 2:55 pm to be served on **JOHN MAZZUTO. 11503 GREEN BAYBERRY DRIVE, PALM BEACH GARDENS, FL 33418.**

I, Alan J. Cutler, being duly sworn, depose and say that on the **29th day of March, 2008** at **9:10 am, I:**

**PERSONALLY SERVED** the within named person with a true copy of the **Summons and Complaint and Exibit(s)** with the date and time endorsed thereon by me, pursuant to state statutes.

**Military Status:** Based upon inquiry of party served, defendant is not in the military service of the United States.

**Description** of Person Served:  Age: 50S,  Sex: M,  Race/Skin Color: White,  Height: 5-10,  Weight: 220,  Hair: Balding,  Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served.

CARL W. WOODS
Notary Public - State of Florida
My Commission Expires Jan 13, 2012
Commission # DD 714379
Bonded Through National Notary Assn.

Alan J. Cutler
Court Officer #843

Subscribed and Sworn to before me on the 31st day of March, 2008 by the affiant who is personally known to me.

NOTARY PUBLIC

**NICOLETTI & HARRIS INC**
**116 John Street**
**New York, NY 10038**
**(212) 267-6448**

Our Job Serial Number: 2008034473

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,                          Case No.: 08 CV 0583(VM)

                                    Plaintiff,        **CLERK'S CERTIFICATE**

           –against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

                                    Defendants.
-------------------------------------------------------------------x

        I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern

district of New York, do hereby certify that this action commenced on January 23, 2008 with the

filing of a summons and complaint, a copy of the summons and complaint was served on

defendant JOHN MAZZUTO on March 29, 2008 at 9:10 a.m. by personal delivery to defendant

JOHN MAZZUTO at such defendant's place of residence located at 11503 Green Bayberry

Drive, Palm Beach Gardens, FL 22418.

        I further certify that the docket entries indicate that the aforementioned defendants have

not filed an answer or otherwise moved with respect to the complaint herein.  The default of

defendant JOHN MAZZUTO is hereby noted.


Dated: New York, New York
       May 1, 2008


                                        **J. MICHAEL MCMAHON**
                                         Clerk of the Court

                                        By:_____
                                            Deputy Clerk

Yahoo!   My Yahoo!   Mail   More New User? Sign in New here? Sign Up

**Web Search**

Dow ↓ **2.36%** Nasdaq ↓ **2.57%**     Thu, Mar 20, 2008, 12:49AM ET - **U.S. Markets closed.**

---

**GET QUOTES**   Finance Search

# Industrial Enterprises of America, Inc. (IEAM.PK)

On Mar 19: **0.28** ↑ 0.03 (12.00%)

ACTIVE TRADERS    AMERITRADE   Switch to **Scottrade**   E☆TRADE
Fidelity    $9.99 trades.   and get up to $100 back
           No surprises.

## Historical Prices

Get **Historical Prices** for:  [      ]  GO

**SET DATE RANGE**

| | | | |
|---|---|---|---|
| Start Date: | Nov | 2 | 2007 |

Eg. Jan 1, 2003

⊙ Daily

| | | | |
|---|---|---|---|
| End Date: | Nov | 2 | 2007 |

○ Weekly
○ Monthly
○ Dividends Only

Get Prices

ADVERTISEMENT

**THE EURO**

Dec. 10, 2007    1.46
Jan. 7, 2008     1.47
Feb. 4, 2008     1.48
March 2008       ?

Profit from the Trend. Trade Currency.

**FREE** Practice Account

**CLICK HERE**

⚡ FXCM
www.FXCM.com

CURRENCY TRADING
INVOLVES SIGNIFICANT
RISK OF LOSS.

First | Prev | Next | Last

**PRICES**

| Date | Open | High | Low | Close | Volume | Adj Close* |
|---|---|---|---|---|---|---|
| 2-Nov-07 | 2.78 | 2.97 | 2.60 | 2.85 | 102,100 | 2.85 |

\* Close price adjusted for dividends and splits.

First | Prev | Next | Last

⬇ Download To Spreadsheet

📊 Add to Portfolio    🔔 Set Alert    ✉ Email to a Friend

Get **Historical Prices** for Another Symbol:  [      ]  GO | Symbol Lookup

- Stock Screener
- Mergers & Acquisitions

- Splits

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright/IP Policy - Send Feedback

**Quotes delayed**, except where indicated otherwise.
Delay times are 15 mins for NASDAQ, 20 mins for NYSE and Amex. See also delay times for other exchanges.

Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data and daily updates provided by Hemscott Americas. Fundamental company data provided by Capital IQ. Quotes and other information supplied by independent providers identified on the Yahoo! Finance partner page. Quotes are updated automatically, but will be turned off after 25 minutes of inactivity. Quotes are delayed at least 15 minutes. Real-Time continuous streaming quotes are available through our premium service. You may turn streaming quotes on or off. All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.



| Home | **Quotes & News** | Market Activity | OTC Company Search | OTC Guide | Products & Services | About |

Home >>   Quotes & News >>   Quote >>   IEAM

**IEAM — Industrial Enterprises of America, Inc.**
Com ($0.001)(New)
Primary Venue: Pink Sheets

▼ **Limited Information**

| Quote | News | Charts | Company Info | Filings | Short Interest | Insider Transactions |

1d    5d    1m    **3m**    6m    YTD    1y    5y    10y    11/2/2007 to 11/3/2007   →

■ IEAM
as of 11/2/2007

High = 2.97                 Daily    $3.00
2.95
2.90
2.85
2.80
2.75
2.70
2.65
2.60
Low = 2.80                     2.55
11/02
112.26 Th
96.22
80.19
64.15
48.11
32.07
16.04
0.00
■ Volume

**Compare**    **Chart Settings**    **Technical Indicators**        Reset

**Chart Type**              **Display**                          Print
Area      ○ Candlestick     ☐ Splits      ☐ Spin-offs
○ Mountain    ◉ Open High Low Close                       Email
○ Line                     ☐ Dividends

All information contained herein is provided "as is." Pink Sheets LLC makes no representation or warranty, expressed or implied, as to the accuracy, timeliness, or completeness of the information provided herein. Neither Pink Sheets LLC, nor its directors, officers, employees, or third party data suppliers, shall bear any responsibility or liability to verify the information and/or its source or for the use, misuse, or inability to use the information provided. None of the foregoing parties shall be liable to any third-party claims or losses of any nature. Accordingly, investors should not use this information as the basis for making an investment decision. Please see Risk Warning and Terms of Service for more information.

Risk Warning | Contact Regulators
Home | About Us | Contact Us | FAQ | Glossary | Site Map
Quotes & News | Market Activity | Company Search | OTC Guide | Products & Services

© Copyright 2007, Pink Sheets LLC. All Rights Reserved.
Please read our Terms of Service, Linking & Framing Terms, Trademarks, and Privacy Statement.

Comments or Suggestions?

SCARSDALE EQUITIES LLC
30 ROCKEFELLER PLAZA STE 4250
NEW YORK NY 10112
TEL: (212) 433-1375

# CONFIRMATION

MAIL TO:

| | FOR THE ACCOUNT OF: | ACCOUNT NUMBER: | AXC-020333 |
|---|---|---|---|
| TRINITY BUI | TRINITY BUI | ACCOUNT TYPE: | 1 |
| 300 EAST 55TH STREET | 300 EAST 55TH STREET | | |
| SUITE 14D | SUITE 14D | YOUR ACCOUNT EXECUTIVE: | |
| THE MILAN BUILDING | THE MILAN BUILDING | GENE MILLER | |
| NEW YORK NY 10022-4389 | NEW YORK NY 10022-4389 | A.E. NUMBER: | RGM |

YOU SOLD:

INDUSTRIAL ENTERPRISES AMER INC COM NEW

| TRADE DATE: | 11-13-07 |
|---|---|
| PROCESS DATE: | 11-13-07 |
| SETTLEMENT DATE: | 11-16-07 |
| CUSIP NUMBER: | 456132-20-8 |
| SYMBOL: | IEAM |

WE CONFIRM THE BELOW TRADE(S), SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THIS CONFIRMATION

| TRADE NUMBER | QUANTITY | PRICE | PRINCIPAL | INTEREST | COMMISSION | SERVICE CHARGE | TRANS. FEE | NET AMOUNT DUE | MKT/CPTY |
|---|---|---|---|---|---|---|---|---|---|
| Q82XNFR | 130,000 | 0.6632350 | 86,220.55 | | 862.16 | | 1.32 | 85,357.07 | 8/0 |
| | Unsolicited Order | AVERAGE UNIT PRICE | TRANSACTION | | ACTED AS AGENT | | | | |

| TOTALS | 130,000 | | 86,220.55 | | 862.16 | | 1.32 | 85,357.07 | |

THIS CONFIRMATION IS AN ADVICE NOT AN INVOICE. REMITTANCE OR SECURITIES ARE DUE ON OR BEFORE SETTLEMENT DATE.

SEE TERMS AND CONDITIONS AND EXPLANATION OF CODED SYMBOLS RELATING TO THIS CONFIRMATION. ON OTHER THAN ROUND LOTS (NORMALLY 100 SHARES) IF DIF
APPEARS ABOVE AN ODD-LOT DIFFERENTIAL HAS BEEN CHARGED IN CONNECTION WITH THIS TRANSACTION. THE AMOUNT OF SUCH DIFFERENTIAL WILL BE FURNISHED UPON REQUEST.
CLEARING THROUGH PERSHING LLC, A SUBSIDIARY OF THE BANK OF NEW YORK MELLON CORPORATION. MEMBER FINRA, NYSE, SIPC. ONE PERSHING PLAZA, JERSEY CITY, NJ 07399

## TERMS AND CONDITIONS

Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefor.

If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on this confirmation promptly and not later than settlement date, or at such earlier time payment may be demanded in accordance with the terms of this transaction and that you do not contemplate sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on this confirmation are not already held in your account with us, we are acting upon your representation that you or your principal own such securities, and it is agreed that you will promptly and not later than settlement date deposit such securities with us. If full payment for the securities purchased by you in the cash account is not received by us, or if securities sold by you in this transaction are not delivered to us in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable to us for any resulting loss, including, without limitation, all expenses, attorney's fees and other costs incurred by us and interest thereon.

If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date, or at such earlier time payment may be demanded to satisfy applicable margin requirements.

Provisions of agreements and contracts shall inure to any successor of your introducing firm or Pershing LLC ("Pershing").

It is understood and agreed that all transactions are subject to the rules and customs of the exchange or market (and its clearing house, if any) where they are executed. The name of the other broker or party and the time of execution will be furnished on request.

YOUR INTRODUCING BROKER DOES NOT RECEIVE COMPENSATION FOR DIRECTING ORDER FLOW IN EQUITY SECURITIES. PERSHING RECEIVES COMPENSATION FOR DIRECTING ORDER FLOW IN CERTAIN EQUITY SECURITIES AND LISTED OPTIONS. THE SOURCE AND NATURE OF THE COMPENSATION, IF ANY, RECEIVED IN CONNECTION WITH THIS TRADE WILL BE FURNISHED UPON WRITTEN REQUEST TO PERSHING.

In those transactions where it is indicated that Pershing or an affiliated company acted in the capacity of principal (as marketmaker or specialist), it fills orders at the inside market without mark-up or down, and charges for its services.

Commission rates are subject to negotiation, and any commission charged to you in this transaction may be more or less than commissions charged to or by others in similar transactions. The source and amount of other commissions received in connection with this transaction will be furnished on request.

Call features may exist for securities. Call features for fixed income securities may affect yield. Complete information will be provided upon request.

The ratings that appear in the description of some fixed income securities have been obtained from rating services which Pershing believes to be reliable; however, Pershing cannot guarantee their accuracy. Securities for which a rating is not available are marked "UNRATED".

If this transaction involves an asset-backed security, including a municipal collateralized mortgage obligation, which represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

PLEASE REPORT ANY ERROR, OMISSION OR EXCEPTION IMMEDIATELY TO YOUR INTRODUCING FIRM AT THE ADDRESS SHOWN ON THIS CONFIRMATION

When Pershing LLC receives a non-directed order from an introducing firm or customer for execution on your behalf and executes that order in accordance with Pershing's best execution policy. Pershing may execute that order itself as a market maker or send that order for execution to an exchange or other off exchange venue.

Details concerning the type of order, venue, date, time of execution as stated in Coordinated Universal Time (UTC), and Multiple Executions are available upon your written request to:

Pershing Best Execution Steering Committee
Pershing LLC
One Pershing Plaza, 6th Floor
Jersey City New Jersey 07399

## EXPLANATION OF CODED SYMBOLS

**Type of Account**

0. Deliver/Receive vs. Payment
1. Cash Account
2. Margin Account
3. Short Account
4. Special Subscription Account
5. Arbitrage Account

8. Non Securities Credit Account- reflects the purchase or sale of Precious Metals which are not securities and are therefore not eligible for protection by the Securities Investor Protection Corporation (SIPC) or for any excess SIPC coverage

**Market**

1. New York Stock Exchange
2. American Stock Exchange
3. Philadelphia Stock Exchange
4. or 5. Over the Counter
5. Boston Stock Exchange
6. Chicago Stock Exchange

7. Chicago Board Options Exchange
9. NYSE ARCA Exchange
C. National Stock Exchange
N. NASDAQ Exchange
I. International Securities Exchange

**Capacity in Which Your Introducing Firm Acted**

1, 2, 3, or 6........as broker only.
4. ...... reprinted confirmation; capacity appears on original
5. or 6 ...... as principal.
9. ...... as agent for the buyer and seller, charging you a commission as shown on this confirmation
0. ...... average price or block transaction.

**Additional Market/Capacity Information**

For trades in which the Market is indicated as other than 4 and the Capacity is indicated as 5 (Principal), Pershing or an affiliated company acted as Principal (pursuant to applicable SEC and stock exchange rules), and your introducing firm (if any) acted as agent.

If so noted on this Confirmation, Pershing or an affiliated company makes a market in this security and acted as principal in buying from or selling to you. Your introducing firm (if any) acted as your agent, charging you a commission for the service.

If average price transaction is indicated on this confirmation your introducing firm or Pershing or an affiliated company may have acted as principal, agent or both or agent for another party on one or more exchanges. Details available through your introducing firm.

SCARSDALE EQUITIES LLC
30 ROCKEFELLER PLAZA STE 4250
NEW YORK NY 10112
TEL: (212) 433-1375

# CONFIRMATION

MAIL TO:

FOR THE ACCOUNT OF:

ACCOUNT NUMBER:    AXC-020333
ACCOUNT TYPE:      1

TRINITY BUI                    TRINITY BUI
300 EAST 55TH STREET           300 EAST 55TH STREET
SUITE 14D                      SUITE 14D
THE MILAN BUILDING             THE MILAN BUILDING
NEW YORK NY 10022-4389         NEW YORK NY 10022-4389

YOUR ACCOUNT EXECUTIVE:
GENE MILLER
A.E. NUMBER:       RGM

---

YOU SOLD:

INDUSTRIAL ENTERPRISES AMER INC COM NEW

TRADE DATE:        11-12-07
PROCESS DATE:      11-12-07
SETTLEMENT DATE:   11-15-07
CUSIP NUMBER:      456132-20-8
SYMBOL:            IEAM

WE CONFIRM THE BELOW TRADE(S), SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THIS CONFIRMATION

| TRADE NUMBER | QUANTITY | PRICE | PRINCIPAL | INTEREST | COMMISSION | SERVICE CHARGE | TRANS. FEE | NET AMOUNT USD | MKT/CPTY |
|---|---|---|---|---|---|---|---|---|---|
| Q8UASH | 263,000 | 0.6573480 | 172,882.52 | | 1,728.69 | | 2.65 | 171,151.18 | 8/0 |
| | Unsolicited Order | AVERAGE UNIT PRICE | TRANSACTION | | | ACTED AS AGENT | | | |

| TOTALS | 263,000 | | 172,882.52 | | 1,728.69 | | 2.65 | 171,151.18 | |

THIS CONFIRMATION IS AN ADVICE NOT AN INVOICE. REMITTANCE OR SECURITIES ARE DUE ON OR BEFORE SETTLEMENT DATE.

SEE TERMS AND CONDITIONS AND EXPLANATION OF CODED SYMBOLS RELATING TO THIS CONFIRMATION. ON OTHER THAN ROUND LOTS (NORMALLY 100 SHARES) IF DIF
APPEARS ABOVE AN ODD-LOT DIFFERENTIAL HAS BEEN CHARGED IN CONNECTION WITH THIS TRANSACTION. THE AMOUNT OF SUCH DIFFERENTIAL WILL BE FURNISHED UPON REQUEST.
CLEARING THROUGH PERSHING LLC, A SUBSIDIARY OF THE BANK OF NEW YORK MELLON CORPORATION. MEMBER FINRA, NYSE, SIPC. ONE PERSHING PLAZA, JERSEY CITY, NJ 07399

## TERMS AND CONDITIONS

Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefor.

If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on this confirmation promptly and not later than settlement date, or at such earlier time payment may be demanded in accordance with the terms of this transaction and that you do not contemplate sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on this confirmation are not already held in your account with us, we are acting upon your representation that you or your principal own such securities, and it is agreed that you will promptly and not later than settlement date deposit such securities with us. If full payment for the securities purchased by you in this transaction is not received by us, or if securities sold by you in this transaction are not delivered to us in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable to us for any resulting loss, including, without limitation, all expenses, attorney's fees and other costs incurred by us and interest thereon.

If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date, or at such earlier time payment may be demanded to satisfy applicable margin requirements.

Provisions of agreements and contracts shall inure to any successor of your introducing firm or Pershing LLC ("Pershing").

It is understood and agreed that all transactions are subject to the rules and customs of the exchange or market (and its clearing house, if any) where they are executed. The name of the other broker or party and the time of execution will be furnished on request.

YOUR INTRODUCING BROKER DOES NOT RECEIVE COMPENSATION FOR DIRECTING ORDER FLOW IN EQUITY SECURITIES. PERSHING RECEIVES COMPENSATION FOR DIRECTING ORDER FLOW IN CERTAIN EQUITY SECURITIES AND LISTED OPTIONS. THE SOURCE AND NATURE OF THE COMPENSATION, IF ANY, RECEIVED IN CONNECTION WITH THIS TRADE WILL BE FURNISHED UPON WRITTEN REQUEST TO PERSHING.

In those transactions where it is indicated that Pershing or an affiliated company acted in the capacity of principal (as marketmaker or specialist), it fills orders at the inside market without mark-up or down, and charges for its services.

Commission rates are subject to negotiation, and any commission charged to you in this transaction may be more or less than commissions charged to you by others in similar transactions. The source and amount of other commissions received in connection with this transaction will be furnished on request.

Call features may exist for securities. Call features for fixed income securities may affect yield. Complete information will be provided upon request.

The ratings that appear in the description of some fixed income securities have been obtained from rating services which Pershing believes to be reliable; however, Pershing cannot guarantee their accuracy. Securities for which a rating is not available are marked "UNRATED".

If this transaction involves an asset-backed security, including a municipal collateralized mortgage obligation, which represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

PLEASE REPORT ANY ERROR, OMISSION OR EXCEPTION IMMEDIATELY TO YOUR INTRODUCING FIRM AT THE ADDRESS SHOWN ON THIS CONFIRMATION

When Pershing LLC receives a non-directed order from an introducing firm or customer for execution on your behalf and executes that order in accordance with Pershing's best execution policy, Pershing may execute that order itself as a market maker or send that order for execution to an exchange or other off exchange venue.

Details concerning the type of order, venue, date, time of execution as stated in Coordinated Universal Time (UTC), and Multiple Executions are available upon your written request to:

Pershing Best Execution Steering Committee
Pershing LLC
One Pershing Plaza, 6th Floor
Jersey City New Jersey 07399

## EXPLANATION OF CODED SYMBOLS

**Type of Account**

0.Deliver/Receive vs. Payment
1.Cash Account
2.Margin Account
3.Short Account
4.Special Subscription Account
5.Arbitrage Account

8.Non Securities Credit Account- reflects the purchase or sale of Precious Metals which are not securities and are therefore not eligible for protection by the Securities Investor Protection Corporation (SIPC) or for any excess SIPC coverage

**Market**

1.New York Stock Exchange
2.American Stock Exchange
3.Philadelphia Stock Exchange
4.or 6. Over the Counter
5.Boston Stock Exchange
6.Chicago Stock Exchange

7.Chicago Board Options Exchange
8.NYSE ARCA Exchange
C.National Stock Exchange
N.NASDAQ Exchange
I.International Securities Exchange

**Capacity in Which Your Introducing Firm Acted**

1, 2, 3, or 8.......as broker only.
4. ...... reprinted confirmation; capacity appears on original
5. or 6. ...... as principal
9. ...... as agent for the buyer and seller, charging you a commission as shown on this confirmation
0. ...... average price or block transaction.

**Additional Market/Capacity Information**

For trades in which the Market is indicated as other than 4 and the Capacity is indicated as 5 (Principal), Pershing or an affiliated company acted as Principal (pursuant to applicable SEC and stock exchange rules), and your introducing firm (if any) acted as agent.

If so noted on this Confirmation, Pershing or an affiliated company makes a market in this security and acted as principal in buying from or selling to you. Your introducing firm (if any) acted as your agent, charging you a commission for the service.

If average price transaction is indicated on this confirmation your introducing firm or Pershing or an affiliated company may have acted as principal, agent or both or agent for another party on one or more exchanges. Details available through your introducing firm.

CB-I (11/07)

SCARSDALE EQUITIES LLC
30 ROCKEFELLER PLAZA STE 4250
NEW YORK NY 10112
TEL: (212)433-1375

# CONFIRMATION

MAIL TO:

TRINITY BUI
300 EAST 55TH STREET
SUITE 14D
THE MILAN BUILDING
NEW YORK NY 10022-4389

FOR THE ACCOUNT OF:

TRINITY BUI
300 EAST 55TH STREET
SUITE 14D
THE MILAN BUILDING
NEW YORK NY 10022-4389

ACCOUNT NUMBER:   AKC-020333
ACCOUNT TYPE:     1

YOUR ACCOUNT EXECUTIVE:
GENE MILLER
A.E. NUMBER:      RGM

YOU SOLD:

INDUSTRIAL ENTERPRISES AMER INC COM NEW

| | |
|---|---|
| TRADE DATE: | 11-09-07 |
| PROCESS DATE: | 11-09-07 |
| SETTLEMENT DATE: | 11-15-07 |
| CUSIP NUMBER: | 456132-20-8 |
| SYMBOL: | IEAM |

WE CONFIRM THE BELOW TRADE(S), SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THIS CONFIRMATION

| TRADE NUMBER | QUANTITY | PRICE | PRINCIPAL | INTEREST | COMMISSION | SERVICE CHARGE | TRANS. FEE | NET AMOUNT USD | MKT/CPTY |
|---|---|---|---|---|---|---|---|---|---|
| Q80N5R | 356,000 | 0.6675090 | 237,633.20 | | 2,376.30 | | 3.64 | 235,253.26 | B/O |
| | Unsolicited Order | AVERAGE UNIT PRICE | TRANSACTION | | | ACTED AS AGENT | | | |
| TOTALS | 356,000 | | 237,633.20 | | 2,376.30 | | 3.64 | 235,253.26 | |

THIS CONFIRMATION IS AN ADVICE NOT AN INVOICE. REMITTANCE OR SECURITIES ARE DUE ON OR BEFORE SETTLEMENT DATE.



SEE TERMS AND CONDITIONS AND EXPLANATION OF CODED SYMBOLS RELATING TO THIS CONFIRMATION ON OTHER THAN ROUND LOTS (NORMALLY 100 SHARES) IF DIF
APPEARS ABOVE AN ODD-LOT DIFFERENTIAL HAS BEEN CHARGED IN CONNECTION WITH THIS TRANSACTION THE AMOUNT OF SUCH DIFFERENTIAL WILL BE FURNISHED UPON REQUEST.
CLEARING THROUGH PERSHING LLC, A SUBSIDIARY OF THE BANK OF NEW YORK MELLON CORPORATION, MEMBER FINRA, NYSE, SIPC, ONE PERSHING PLAZA, JERSEY CITY, NJ 07399.

## TERMS AND CONDITIONS

Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment therefor.

If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on this confirmation promptly and not later than settlement date, or at such earlier time payment may be demanded in accordance with the terms of this transaction and that you do not contemplate sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on this confirmation are not already held in your account with us, we are acting upon your representation that you or your principal own such securities, and it is agreed that you will promptly and not later than settlement date deposit such securities with us. If full payment for the securities purchased by you in this transaction is not received by us, or if securities sold by you in this transaction are not delivered to us in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable to us for any resulting loss, including, without limitation, all expenses, attorney's fees and other costs incurred by us and interest thereon.

If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date, or at such earlier time payment may be demanded to satisfy applicable margin requirements.

Provisions of agreements and contracts shall inure to any successor of your introducing firm or Pershing LLC ("Pershing").

It is understood and agreed that all transactions are subject to the rules and customs of the exchange or market (and its clearing house, if any) where they are executed. The name of the other broker or party and the time of execution will be furnished on request.

YOUR INTRODUCING BROKER DOES NOT RECEIVE COMPENSATION FOR DIRECTING ORDER FLOW IN EQUITY SECURITIES. PERSHING RECEIVES COMPENSATION FOR DIRECTING ORDER FLOW IN CERTAIN EQUITY SECURITIES AND LISTED OPTIONS. THE SOURCE AND NATURE OF THE COMPENSATION, IF ANY, RECEIVED IN CONNECTION WITH THIS TRADE WILL BE FURNISHED UPON WRITTEN REQUEST TO PERSHING.

In those transactions where it is indicated that Pershing or an affiliated company acted in the capacity of principal (as marketmaker or specialist), it fills orders at the inside market without mark-up or down, and charges for its services.

Commission rates are subject to negotiation, and any commission charged to you in this transaction may be more or less than commissions charged to or by others in similar transactions. The source and amount of other commissions received in connection with this transaction will be furnished on request.

Call features may exist for securities. Call features for fixed income securities may affect yield. Complete information will be provided upon request.

The ratings that appear in the description of some fixed income securities have been obtained from rating services which Pershing believes to be reliable; however, Pershing cannot guarantee their accuracy. Securities for which a rating is not available are marked "UNRATED".

If this transaction involves an asset-backed security, including a municipal collateralized mortgage obligation, which represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

PLEASE REPORT ANY ERROR, OMISSION OR EXCEPTION IMMEDIATELY TO YOUR INTRODUCING FIRM AT THE ADDRESS SHOWN ON THIS CONFIRMATION

When Pershing LLC receives a non-directed order from an introducing firm or customer for execution on your behalf and executes that order in accordance with Pershing's best execution policy. Pershing may execute that order itself as a market maker or send that order for execution to an exchange or other off exchange venue.

Details concerning the type of order, venue, date, time of execution as stated in Coordinated Universal Time (UTC), and Multiple Executions are available upon your written request to:

Pershing Best Execution Steering Committee
Pershing LLC
One Pershing Plaza, 6th Floor
Jersey City New Jersey 07399

## EXPLANATION OF CODED SYMBOLS

**Type of Account**

0. Deliver/Receive vs. Payment
1. Cash Account
2. Margin Account
3. Short Account
4. Special Subscription Account
5. Arbitrage Account

8. Non Securities Credit Account- reflects the purchase or sale of Precious Metals which are not securities and are therefore not eligible for protection by the Securities Investor Protection Corporation (SIPC) or for any excess SIPC coverage

**Market**

1. New York Stock Exchange
2. American Stock Exchange
3. Philadelphia Stock Exchange
4. or 6. Over the Counter
5. Boston Stock Exchange
6. Chicago Stock Exchange

7. Chicago Board Options Exchange
8. NYSE ARCA Exchange
C. National Stock Exchange
N. NASDAQ Exchange
I. International Securities Exchange

**Capacity in Which Your Introducing Firm Acted**

1, 2, 3, or 6 ......as broker only
4. ...... reprinted confirmation: capacity appears on original
5. or 6. ...... as principal
9. ...... as agent for the buyer and seller, charging you a commission as shown on this confirmation
0. ...... average price or block transaction

**Additional Market/Capacity Information**

For trades in which the Market is indicated as other than 4 and the Capacity is indicated as 5 (Principal), Pershing or an affiliated company acted as Principal (pursuant to applicable SEC and stock exchange rules), and your Introducing firm (if any) acted as agent.

If so noted on this Confirmation, Pershing or an affiliated company makes a market in this security and acted as principal in buying from or selling to you. Your introducing firm (if any) acted as your agent, charging you a commission for the service.

If average price transaction is indicated on this confirmation your Introducing firm or Pershing or an affiliated company may have acted as principal, agent or both or agent for another party on one or more exchanges. Details available through your Introducing firm.

SCARSDALE EQUITIES LLC
50 ROCKEFELLER PLAZA STE 4250
NEW YORK NY 10112
TEL: (212)433-1375

MAIL TO:

# CONFIRMATION

TRINITY BUI
300 EAST 55TH STREET
SUITE 14D
THE MILAN BUILDING
NEW YORK NY 10022-4389

FOR THE ACCOUNT OF:

TRINITY BUI
300 EAST 55TH STREET
SUITE 14D
THE MILAN BUILDING
NEW YORK NY 10022-4389

ACCOUNT NUMBER:   AKC-020333
ACCOUNT TYPE:     1

YOUR ACCOUNT EXECUTIVE:
GENE MILLER
A.E. NUMBER:      RGM

YOU SOLD:

INDUSTRIAL ENTERPRISES AMER INC COM NEW

TRADE DATE:       11-08-07
PROCESS DATE:     11-08-07
SETTLEMENT DATE:  11-14-07
CUSIP NUMBER:     456132-20-8
SYMBOL:           IEAM

WE CONFIRM THE BELOW TRADE(S), SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THIS CONFIRMATION

| TRADE NUMBER | QUANTITY | PRICE | PRINCIPAL | INTEREST | COMMISSION | SERVICE CHARGE | TRANS. FEE | NET AMOUNT USD | MKT/CPTY |
|---|---|---|---|---|---|---|---|---|---|
| Q8BXN8 | 121,000 | 0.7920210 | 95,834.54 | | 958.32 | | 1.47 | 94,874.75 | 8/0 |
| | Unsolicited Order | AVERAGE UNIT PRICE | TRANSACTION | | ACTED AS AGENT | | | | |
| TOTALS | 121,000 | | 95,834.54 | | 958.32 | | 1.47 | 94,874.75 | |

THIS CONFIRMATION IS AN ADVICE NOT AN INVOICE. REMITTANCE OR SECURITIES ARE DUE ON OR BEFORE SETTLEMENT DATE.

SEE TERMS AND CONDITIONS AND EXPLANATION OF CODED SYMBOLS RELATING TO THIS CONFIRMATION. ON OTHER THAN ROUND LOTS (NORMALLY 100 SHARES) IF DIF APPEARS ABOVE AN ODD-LOT DIFFERENTIAL HAS BEEN CHARGED IN CONNECTION WITH THIS TRANSACTION. THE AMOUNT OF SUCH DIFFERENTIAL WILL BE FURNISHED UPON REQUEST. CLEARING THROUGH PERSHING LLC, A SUBSIDIARY OF THE BANK OF NEW YORK MELLON CORPORATION. MEMBER FINRA, NYSE, SIPC. ONE PERSHING PLAZA, JERSEY CITY, NJ 07399

## TERMS AND CONDITIONS

Securities purchased on a cash or margin basis are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for other customers, but such securities, if hypothecated, will be withdrawn from hypothecation as soon as practicable after receipt of payment thereof.

If this transaction is a purchase by you in a cash account and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on this confirmation promptly and not later than settlement date, or at such earlier time payment may be demanded in accordance with the terms of this transaction and that you do not contemplate sale of such securities prior to making such payment. If this transaction is a sale by you in a cash account and the securities described on this confirmation are not already held in your account with us, we are acting upon your representation that you or your principal own such securities, and it is agreed that you will promptly and not later than settlement date deposit such securities with us. If full payment for the securities purchased by you in this transaction is not received by us, or if securities sold by you in this transaction are not delivered to us in proper form on or after the first trading day after settlement date, we may at our option cancel or otherwise liquidate this transaction without notice to you, and you will be liable to us for any resulting loss, including, without limitation, all expenses, attorney's fees and other costs incurred by us and interest thereon.

If this transaction is a purchase by you in a margin account it is agreed that sufficient cash or acceptable collateral will be deposited on or before settlement date, or at such earlier time payment may be demanded to satisfy applicable margin requirements.

Provisions of agreements and contracts shall inure to any successor of your introducing firm or Pershing LLC ("Pershing").

It is understood and agreed that all transactions are subject to the rules and customs of the exchange or market (and its clearing house, if any) where they are executed. The name of the other broker or party and the time of execution will be furnished on request.

YOUR INTRODUCING BROKER DOES NOT RECEIVE COMPENSATION FOR DIRECTING ORDER FLOW IN EQUITY SECURITIES. PERSHING RECEIVES COMPENSATION FOR DIRECTING ORDER FLOW IN CERTAIN EQUITY SECURITIES AND LISTED OPTIONS. THE SOURCE AND NATURE OF THE COMPENSATION, IF ANY, RECEIVED IN CONNECTION WITH THIS TRADE WILL BE FURNISHED UPON WRITTEN REQUEST TO PERSHING.

In those transactions where it is indicated that Pershing or an affiliated company acted in the capacity of principal (as marketmaker or specialist), it fills orders at the inside market without mark-up or down, and charges for its services.

Commission rates are subject to negotiation, and any commission charged to you in this transaction may be more or less than commissions charged to or by others in similar transactions. The source and amount of other commissions received in connection with this transaction will be furnished on request.

Call features may exist for securities. Call features for fixed income securities may affect yield. Complete information will be provided upon request.

The ratings that appear in the description of some fixed income securities have been obtained from rating services which Pershing believes to be reliable; however, Pershing cannot guarantee their accuracy. Securities for which a rating is not available are marked "UNRATED".

If this transaction involves an asset-backed security, including a municipal collateralized mortgage obligation, which represents an interest in or is secured by a pool of receivables or other financial assets that are subject continuously to prepayment, then the actual yield of such security may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield (including at a minimum estimated yield, weighted average life, and the prepayment assumptions of underlying yield) will be furnished upon your written request.

PLEASE REPORT ANY ERROR, OMISSION OR EXCEPTION IMMEDIATELY TO YOUR INTRODUCING FIRM AT THE ADDRESS SHOWN ON THIS CONFIRMATION

When Pershing LLC receives a non-directed order from an introducing firm or customer for execution on your behalf and executes that order in accordance with its best execution policy, Pershing may execute that order itself as a market maker or send that order for execution to an exchange or other off exchange venue.

Details concerning the type of order, venue, date, time of execution as stated in Coordinated Universal Time (UTC), and Multiple Executions are available upon your written request to:

Pershing Best Execution Steering Committee
Pershing LLC
One Pershing Plaza, 6th Floor
Jersey City New Jersey 07399

## EXPLANATION OF CODED SYMBOLS

**Type of Account**

0.Deliver/Receive vs. Payment
1.Cash Account
2.Margin Account
3.Short Account
4.Special Subscription Account
5.Arbitrage Account

8.Non Securities Credit Account-reflects the purchase or sale of Precious Metals which are not securities and are therefore not eligible for protection by the Securities Investor Protection Corporation (SIPC) or for any excess SIPC coverage

**Market**

1.New York Stock Exchange
2.American Stock Exchange
3.Philadelphia Stock Exchange
4.or 6. Over the Counter
5.Boston Stock Exchange
6.Chicago Stock Exchange

7.Chicago Board Options Exchange
9.NYSE ARCA Exchange
C.National Stock Exchange
N.NASDAQ Exchange
I.International Securities Exchange

**Capacity in Which Your Introducing Firm Acted**

1, 2, 3, or 8. ......as broker only.
4. ...... reprinted confirmation: capacity appears on original
5. or 6. ...... as principal.
9. ...... as agent for the buyer and seller, charging you a commission as shown on this confirmation
0. ...... average price or block transaction.

**Additional Market/Capacity Information**

For trades in which the Market is indicated as other than 4 and the Capacity is indicated as 5 (Principal), Pershing or an affiliated company acted as Principal (pursuant to applicable SEC and stock exchange rules), and your introducing firm (if any) acted as agent.

If so noted on this Confirmation, Pershing or an affiliated company makes a market in this security and acted as principal in buying from or selling to you. Your introducing firm (if any) acted as your agent, charging you a commission for the service.

If average price transaction is indicated on this confirmation your introducing firm or Pershing or an affiliated company may have acted as principal, agent or both or agent for another party on one or more exchanges. Details available through your introducing firm.

CB-1 (11/07)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,                         Case No.: 08 CV 0583(VM)

                        Plaintiff,                         **DEFAULT JUDGMENT**

      –against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

                    Defendants.
------------------------------------------------------------------x

      This action having been commenced on January 23, 2008 by the filing of the Summons and Complaint, and a copy of the Summons and Complaint having been personally served on the defendant, JOHN MAZZUTO, on March 29, 2008 and the defendant not having answered the Complaint, and the time for answering the Complaint having expired, it is

      ORDERED ADJUDGED AND DECREED: That the plaintiffs have judgment against defendant, JOHN MAZZUTO, in the amount of $1,991,329.19 with interest at 9% from November 6, 2007 amounting to $2,066,217.00 on the first cause of action, awarding damages to be determined at Inquest on the remaining causes of action, plus costs and disbursements of this action in an amount to be determined at Inquest.

Dated: New York, New York

                                _____
                                      U.S.D.J.

                              This document was entered on the docket
                              on _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

TRINITY BUI and TRINITY FINANCING
INVESTMENTS CORPORATION,                    Case No.: 08 CV 0583(VM)

                 Plaintiff,          **STATEMENT OF DAMAGES**

      –against–

INDUSTRIAL ENTERPRISES OF AMERICA INC.,
BECKSTEAD AND WATTS, LLP,
JOHN MAZZUTO, JAMES MARGULIES,
DENNIS O'NEILL, and JORGE YEPES,

             Defendants.
------------------------------------------------------------------x

Principal amount sued for (first cause of action only). . . . . . . . . . . . . . . .$1,991,329.19

Interest at 9 % from November 6, 2007 through April 5, 2008 . . . . . . . .$   74,142.91

Costs and Disbursements:

Clerk's Fee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$      350.00
Process Server fee for service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$      395.00
Statutory fee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$

Total (as of April 5, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$2,066,217.00

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
### Southern District of New York

Index Number: 08CV0583

Plaintiff:

**TRINITY BUI AND TRINITY FINANCING INVESTMENTS CORPORATION**

vs.

Defendant:

**INDUSTRIAL ENTERPRISES OF AMERICA INC, ET AL.,**

**ORIGINAL**

For:
Michael C. Barrows, Esquire
BARROWS & ASSOCIATED PLLC
330 Madison Avenue 6th Floor
New York, NY  10017

Received by NICOLETTI & HARRIS INC on the 26th day of March, 2008 at 2:55 pm to be served on **JOHN MAZZUTO. 11503 GREEN BAYBERRY DRIVE, PALM BEACH GARDENS, FL 33418.**

I, Alan  J. Cutler, being duly sworn, depose and say that on the **29th day of March, 2008** at **9:10 am, I:**

**PERSONALLY SERVED** the within named person with a true copy of the **Summons and Complaint and Exibit(s)** with the date and time endorsed thereon by me, pursuant to state statutes.

**Military Status:** Based upon inquiry of party served, defendant is not in the military service of the United States.

**Description** of Person Served:  Age: 50S,  Sex: M,  Race/Skin Color: White,  Height: 5-10,  Weight: 220,  Hair: Balding,  Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served.

CARL W. WOODS
Notary Public - State of Florida
My Commission Expires Jan 13, 2012
Commission # DD 714379
Bonded Through National Notary Assn.

Alan  J. Cutler
Court Officer #843

Subscribed and Sworn to before me on the 31st day of March, 2008 by the affiant who is personally known to me.

NOTARY PUBLIC

**NICOLETTI & HARRIS INC**
**116 John Street**
**New York, NY  10038**
**(212) 267-6448**

Our Job Serial Number: 2008034473

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j